## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LESHURN HUNT, #N42562, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-00247-NJR |
| | ) | |
| UNKNOWN ORANGE CRUSH | ) | |
| OFFICERS, | ) | |
| DOCTOR VIPEN SHAH, | ) | |
| MS. T. PEEK, | ) | |
| WARDEN THOMAS SPILLER, and | ) | |
| UNKNOWN MEMBERS OF | ) | |
| PINCKNEYVILLE MEDICAL STAFF, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Leshurn Hunt, an inmate currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* civil rights action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges that his rights were violated during a strip search and cell shakedown conducted by the Orange Crush Tactical Team ("Orange Cursh") at Pinckneyville in March 2014, and also by the alleged deliberate indifference of Orange Crush officers and members of the prison's medical staff to his medical needs following the shakedown.

### Merits Review Under 28 U.S.C. § 1915A

The complaint is before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion

of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## The Complaint

On or about March 10, 2014, Plaintiff's housing unit at Pinckneyville was searched by the Orange Crush Tactical Team. (Doc. 1 at 7.) The search began around 7:00 a.m. (*Id.*) The officers awoke Plaintiff and the other inmates as they entered the housing unit, "yelling and screaming at them to" strip. (*Id.*) Plaintiff and the other inmates were then subjected to a visual strip search as they stood side-by-side one another, completely naked. Plaintiff and his cellmate were ordered to turn around, place their hands behind their backs, and stand against the wall outside of their cell with their heads facedown. (*Id.*)

Plaintiff and the other inmates were ordered to stand still and be quiet. (*Id.*) About five to eight minutes later, he was ordered to turn to the left (while still facing down with his arms behind his back) and walk down the gallery. (*Id.* at 7-8.) As he was walking, an unknown Orange Crush officer forcefully grabbed his left arm and pushed him to the ground, saying, "Put your fucking head-down [sic.] like this, and don't fucking say a word to me." (*Id.* at 8.)

Plaintiff's and the other inmates' hands were then cuffed, and they were escorted to the gym. (*Id.*) Plaintiff's handcuffs were very tight and left marks on his wrist. (*Id.*) Inside the gym, Plaintiff and the inmates were ordered to stand and face the bleachers with their heads down and to refrain from talking. (*Id.* at 9.) They remained in such a position for approximately two hours, and then were escorted back to their cells. (*Id.*)

Plaintiff informed the Orange Crush tactical officer who placed him back in his cell that his left shoulder and lower back were in pain and that he was in need of assistance by a health care staff member. (*Id.*) The officer told Plaintiff that he could talk to someone else about his medical issues, but that it was not the officer's problem. (*Id.*)

The next morning, March 11, 2014, Plaintiff filled out a medical request slip so that he could be placed on sick call. (*Id.*) After a few days passed without being called to be seen by a health care professional, Plaintiff filled out two more request slips. (*Id.*) Plaintiff spoke with two correctional officers and some prison nurses seeking medical care, but they told him that they could not take him to the Health Care Department ("HCD") because the prison was on lockdown. (*Id.* at 10.)

On March 18, 2014, two nurses came to the cellblock to distribute medication. (*Id.*) Plaintiff asked the nurses if he could give them a request slip. (*Id.*) The older of the two nurses said yes, and upon returning to the cell (presumably after going to the HCD), she told him that he could not be seen by a health care professional due to the lockdown. (*Id.*) She did, however, give Plaintiff some Tylenol in exchange for a copayment. (*Id.*)

The Tylenol did not ease Plaintiff's shoulder or back pain, and so on March 23, 2014, he made another sick call request. (*Id.*) This time, he was called to the HCD to see a nurse. (*Id.*) He was charged a $5 copayment. (*Id.*) He then met with Dr. Shah. (*Id.* at 11.)

Plaintiff had also been suffering from hemorrhoids, a fact that he disclosed on his medical request slips along with his shoulder and back pain. (*Id.* at 14.) Plaintiff alleges, however, that the nurses had only scheduled him to see Dr. Shah for his hemorrhoid-related injuries. (*Id.* at 12.) Dr. Shah only treated Plaintiff for his hemorrhoid issue, telling him that he was not scheduled to treat his other injuries. (*Id.* at 11.) He told Plaintiff to leave when Plaintiff insisted that he had requested to be seen multiple times for his shoulder and back injuries and that he was in a lot of pain. (*Id.*) Plaintiff continued to request treatment and "made every attempt" to inform the nurses and Dr. Shah that he had suffered an unrelated arm injury that had been aggravated by his most recent shoulder injury. (*Id.* at 12.)

Eventually, on June 11, 2014, Plaintiff was seen by Ms. Peek, a prison nurse. (*Id.*) Peek demanded that Plaintiff pay a $5 copayment. (*Id.*). Plaintiff refused, saying that he had paid multiple copayments throughout the course of his attempts at receiving treatment for his shoulder and back injuries but had not yet received any aid. (*Id.*) Peek told him it was not her problem and persisted to demand that he make a copayment. (*Id.* at 13.) When Plaintiff explained that he had been requesting help from the HCD for several weeks, Peek told him that "its [sic] just too bad because [Shah] wont [sic] be here until something like…2 weeks." (*Id.*) She refused to let Plaintiff see another doctor and told him that she would not give him any pain medication because he apparently had an x-ray that showed that nothing was wrong. (*Id.*) Peek eventually told Plaintiff to leave. Before returning to his cell, Plaintiff filled out another request, this time also seeking an MRI. (*Id.*)

Plaintiff was seen by Dr. Shah on April 22, 2014. (*Id.* at 14.) He informed the prison doctor that he was in an immense amount of pain and reminded him that he had complained of his shoulder and back injuries to him back in March. (*Id.*) Dr. Shah prescribed pain medication

and ordered an x-ray. (*Id.* at 15.)

Plaintiff seeks compensatory and punitive damages. (*Id.* at 18.) The Court will evaluate Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. Plaintiff sets forth three discrete claims:

> **COUNT 1:** Eighth Amendment claim against Unknown Orange Crush Officers for inflicting unnecessary physical pain upon Plaintiff during the shakedown;
>
> **COUNT 2:** Eighth Amendment claim for deliberate indifference to Plaintiff's injuries by certain Unknown Orange Crush Officers and nurses, as well as by Shah and Peek; and
>
> **COUNT 3:** Conspiracy under 42 U.S.C. § 1983, in that Defendants agreed to deprive Plaintiff of his constitutional rights and protect one another from liability.

## Discussion

The intentional use of excessive force by correctional employees against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is therefore actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as a part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 599 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). In addition, an officer who witnesses the improper use of force against a prisoner can be found liable under the Eighth Amendment. *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ("[O]ne who is given the badge of authority...may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."). Plaintiff has adequately pleaded an Eighth Amendment claim as to the Unknown Orange Crush officers for their alleged role in causing injury to Plaintiff's shoulder and back or for witnessing such use of force and yet failing to intervene.

**Count 1** survives preliminary review.

As to **Count 2**, in order to state a medical claim under the Eighth Amendment, a plaintiff must show that his condition "was objectively serious," and that officials acted with the requisite intent towards that condition. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). The complaint alleges an objectively serious medical condition: Plaintiff asserts he has experienced severe and persistent pain in his shoulder and lower back, which were broken due to the actions of the Orange Crush tactical unit. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) ("[T]he presence of a medical condition that significantly affects an individual's daily activities...or the existence of chronic and substantial pain" indicates the presence of a serious medical condition.) (internal quotation marks and citations omitted). Plaintiff's claim also passes the subjective hurdle—allegations of a failure to treat or intervene on a prisoner's behalf in the face of an objectively serious medical condition can constitute indifference, depending on the circumstances. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010). Further, a prisoner's correspondence to a prison supervisor may "establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). **Count 2** shall therefore proceed against Defendants Shah, Peek, the Unknown Orange Crush officers who failed to aid Plaintiff when he informed them of his injuries, as well as the Unknown members of the medical staff who also allegedly failed to act in response to notice of Plaintiff's injuries so that further fact finding may be conducted.

But neither **Count 1** nor **Count 2** survives as against Thomas Spiller, Warden of Pinckneyville. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or

participated in a constitutional deprivation." *Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005) (citations omitted). As a result, the *respondeat superior* doctrine—supervisory liability—generally does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g.*, *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). "Supervisory liability will be found...if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Chavez v. Illinois State Police,* 251 F.3d 612, 651 (7th Cir. 2001); *see also Doyle v. Camelot Care Ctrs., Inc.,* 305 F.3d 603, 615 (7th Cir. 2002) (allegations that an agency's senior officials were personally responsible for creating the policies, practices, and customs that caused the constitutional deprivations suffice to demonstrate personal involvement). No such involvement attributable to Warden Spiller, however, is alleged here. Therefore, Spiller is dismissed from **Counts 1** and **2** without prejudice.

Finally, in order to maintain a § 1983 conspiracy claim (**Count 3**), Plaintiff "must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights, and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir. 1988). The critical part of a civil conspiracy is an agreement between the parties to inflict wrong or injury upon another and an overt act in furtherance of the agreement. *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir. 1979) *cert. granted in part, judgment rev'd in part,* 446 U.S. 754 (1980). Plaintiff has not alleged the existence of such an agreement. Therefore, **Count 3** is dismissed without prejudice.

In summary, Plaintiff shall be allowed to proceed with his Eighth Amendment excessive force claim against the Unknown Orange Crush Officers (**Count 1**). In addition, he shall be

allowed to proceed with this Eighth Amendment deliberate indifference claim against Shah, Peek, Unknown Orange Crush Officers, and Unknown Members of Pinckneyville Medical Staff (**Count 2**). **Count 3** is dismissed without prejudice. The claims against Spiller, Warden of Pinckneyville, shall also be dismissed without prejudice. The Clerk of Court shall be directed, however, to keep Spiller as a party in this suit for the sole purpose of assisting with the identification of the Unknown defendants.

### Pending Motion

Plaintiff's motion for service of process at Government expense (Doc. 4) is **GRANTED in part and DENIED in part**. Service shall be ordered on Defendants Shah and Peek. Service shall also be ordered on Defendant Spiller for the sole purpose of assisting with the identification of the Unknown defendants. Service cannot be ordered on the Unknown defendants until Plaintiff identifies them by name in an amended complaint.

### Disposition

**IT IS ORDERED** that Plaintiff may proceed on **COUNTS 1** and **2**. **COUNT 3** is **DISMISSED** without prejudice. Plaintiff may proceed against Defendants **SHAH**, **PEEK**, **SPILLER**, **UNKNOWN ORANGE CRUSH OFFICERS**, and **UNKNOWN MEMBERS OF PINCKNEYVILLE MEDICAL STAFF**.

The Clerk of Court shall prepare for Defendants **SHAH**, **PEEK**, and **SPILLER:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take

appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on Defendants **UNKNOWN ORANGE CRUSH OFFICERS** and **UNKNOWN MEMBERS OF PINCKNEYVILLE MEDICAL STAFF** until such time as Plaintiff has identified these defendants in the complaint by filing a motion to substitute the unknown defendants with the names of these individuals in the caption and, where applicable, throughout the complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including discovery aimed at identifying Defendants **UNKNOWN ORANGE CRUSH OFFICERS** and **UNKNOWN ORANGE CRUSH OFFICERS**.

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 29, 2016**

*[signature]*

**NANCY J. ROSENSTENGEL**
**United States District Court**