IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LESHURN HUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-CV-247-NJR-DGW |
| | ) |
| ORANGE CRUSH OFFICERS, | ) |
| DOCTOR VIPIN SHAH, T PEEK, | ) |
| WARDEN THOMAS SPILLER, and | ) |
| PINCKNEYVILLE MEDICAL STAFF | ) |
| JANE AND JOHN DOES, | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

**ROSENSTENGEL, District Judge:**

This matter is before the Court on a Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 49), which recommends that the Motion for Summary Judgment filed by Defendant Vipin Shah and Tracy Peek[1] (Docs. 42 and 43) be granted. The Report and Recommendation was entered on June 1, 2018. Defendants Shah and Peek filed a timely objection to the Report and Recommendation on June 15, 2018 (Doc. 50).

### PRELIMINARY MATTER

As recommended by Magistrate Judge Wilkerson, the Court construes the document filed by Plaintiff Leshurn Hunt on December 19, 2017 (at Doc. 44) to be a Response to Defendant's Motion for Summary Judgment, rather than a Cross Motion for

---

[1] The Clerk's Office is **DIRECTED** to update the docket sheet to reflect the true and accurate name of the following defendant: "T. Peek" should be "Tracy Peek."

Summary Judgment.

**FACTUAL BACKGROUND**

Defendants Shah and Peek filed a Motion for Summary Judgment as to Plaintiff Leshurn Hunt's ("Hunt") claims against them, which are alleged within Count 2 of his Complaint. In Count 2, Hunt alleges an Eighth Amendment claim for deliberate indifference to a serious medical need by certain Unknown Orange Crush Officers and nurses, as well as by Shah and Peek (Doc. 6, p. 5).

During a search conducted on March 10, 2014 or March 13, 2014, Hunt's housing unit at Pinckneyville was searched by the Orange Crush Tactical Team (Doc. 43-1, p. 5). During that search, an unknown Orange Crush officer forcefully grabbed Hunt's left arm and pushed him to the ground, causing injury (Doc. 43-1, p. 11, 17). Specifically, Hunt experienced a sharp pain in his left arm and lower back (Doc. 43-1, p. 22). This pain continued so Hunt submitted various sick call request slips following the incident (*Id.*). On March 18, 2014, a nurse came to Hunt's cell and examined him during lockdown (Doc. 43-1, p. 22, Doc. 43-4, p. 12). The note indicates that Hunt complained of arm discomfort and his hand was warm, but his hand was normal in color and moved easily (Doc. 43-4, p. 12). The nurse discussed Hunt's complaints with Shah, who did not examine Hunt at this time, but prescribed Tylenol for the pain (*Id.*). Shah also recommended Hunt follow up with nurse sick call if the pain continues (*Id.*).

Hunt continued to put in sick call requests for his pain (Doc. 43-1, p. 24). On March 26, 2014, Hunt was seen during nurse sick call for complaints of painful

hemorrhoid complications and referred to the doctor (Doc. 43-4, p. 14). The next day, on March 27, 2014, Hunt was seen by Shah for hemorrhoid treatment (Doc. 43-4, p. 16). Hunt explained in his deposition that he was supposed to be seen at this time for his arm and back pain as well, as he specified this on his request slips (Doc. 43-1, p. 24; Doc. 44, p. 50, 52). During his meeting with Shah on March 27, 2014, Hunt told Shah that his arm and back still hurt, but Shah responded that Hunt was not there for that and told him to leave (Doc. 43-1, p. 24-25).

The next time Hunt was seen by a nurse for his back and arm pain was on April 5, 2014; he was given Motrin (Doc. 43-4, p. 18). On April 19, 2014, Hunt was again seen by a nurse for back and arm pain (Doc. 43-4, p. 21). This time, he was referred to Shah (*Id.*). At an appointment on April 22, 2014, Shah examined Hart's arm and back and determined that he was not displaying any acute injuries or swelling (Doc. 43-4, p. 22; Doc. 43-1, p. 26; Doc. 43-2, p. 3). Shah prescribed Ibuprofen and ordered an x-ray of Hart's spine (Doc. 43-4, p. 22; Doc. 43-2, p. 3). An x-ray was performed on April 23, 2014. It showed degenerative changes to Hunt's spine, but did not show any acute injuries or fractures (Doc. 43-2, p. 3). Based on Shah's examination of the x-ray results, he did not think that additional treatments were medically necessary (*Id.*).

Hunt submitted another sick call request on April 24, 2014, relating to his back and arm pain (Doc. 44, p. 51). An appointment was then scheduled for June 5, 2014, but Hunt did not show up (Doc. 43-4, p. 23). On June 11, 2014, Hunt was seen by Peek for pain in his lower spine (Doc. 43-1, p. 28). Peek's note shows that Hunt had no gait

disturbance and was able to lean forward and straighten up without any distress or acute discomfort (*Id.*). She indicates that Hunt demanded to be seen by a doctor and refused medication (*Id.*). Hunt indicates, however, that she falsified her report, refused to examine him, and did not offer him any medication (Doc. 43-1, p. 28).

## THE REPORT AND RECOMMENDATION

Magistrate Judge Wilkerson recommends denying Defendants' motion for summary judgment in its entirety. As to Shah, Magistrate Judge Wilkerson found that Hunt raised claims against Shah in both his role as Hunt's treating physician and his role as the medical director at Pinckneyville. Magistrate Judge Wilkerson specifically concluded that, as to Hunt's claim against Shah as his treating physician, a jury could find that Shah knowingly refused treatment and persisted in a course of treatment known to be ineffective. As to the claim against Shah as the medical director at Pinckneyville, Magistrate Judge Wilkerson found that material issues of fact exist as to Shah's responsibilities and knowledge regarding the disregarded medical request slips. As to Peek, Magistrate Judge Wilkerson concluded that a reasonable jury could find that Peek refused to provide Hunt with pain medication and refused to conduct an exam and such treatment could constitute deliberate indifference to a serious medical need.

## DISCUSSION

Where timely objections are filed, the Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see*

*also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Harper*, 824 F. Supp. at 788. In making this determination, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.* (quoting 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)).

Here, Defendants Shah and Peek filed a timely objection to the Report and Recommendation. First, Defendants argue that the facts are insufficient to support a finding that Shah was deliberately indifferent on the basis that he knowingly refused to provide treatment and doggedly persisted in a course of treatment known to be ineffective.

Shah was notified of Hunt's back and arm pain on March 18, 2014 when he consulted with the nurse and decided to provide Hunt with Tylenol to treat his pain. On March 27, 2014, the next time Shah saw Hunt, Hunt complained that he was still experiencing arm and back pain, but this complaint was dismissed by Shah on the basis that he did not follow the proper procedures and could only be treated for hemorrhoids. Hunt testified that he specified in his request slips that he was suffering from hemorrhoid pain and arm and back pain (Doc. 43-1, p. 24; Doc. 44, p. 50, 52). On April 22, 2014, Shah saw Hunt again. While he ordered an x-ray of Hunt's spine, the only treatment provided to Hunt was Ibuprofen, despite the fact that Shah and the nurses had been prescribing various forms of Ibuprofen and Acetaminophen for approximately six

weeks, and Hunt was still complaining of pain. After considering all of the facts and construing them in the light most favorable to Hunt, the Court concludes that a jury could find that Shah refused medical treatment or persisted in a course of treatment known to be ineffective. *See Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("A prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition."). Accordingly, the Court adopts Magistrate Judge Wilkerson's Report and Recommendation on this point.

Second, Defendants argue that Hunt did not allege deliberate indifference against Shah as a medical administrator in his Complaint, nor did the Court specify supervisory allegations against Shah in its initial review. The Court agrees with Defendants. In the documents cited by Magistrate Judge Wilkerson for the proposition that Hunt proceeds against Shah as "Medical Director" at Pinckneyville Correctional Center, he actually only refers to Shah as a "Medical Doctor," *not* a "Medical Director." (*See* Doc. 44, p. 6; Doc. 45-1, p. 1). Accordingly, the Court rejects Magistrate Judge Wilkerson's Report and Recommendation on this point.

Lastly, Defendants argue that summary judgment should not have been denied as to Peek. As to Peek's evaluation of Hunt on June 11, 2014, the facts are directly in dispute. Hunt specifically testified that Peek falsified her report, which directly disputes everything in her notes for that day (Doc. 43-1, p. 28). Hunt also testified that Peek refused to treat him and told him that the x-rays show there is nothing wrong with his back (Doc. 43-1, p. 29). As such, summary judgment is inappropriate. Taking Hunt's

allegations as true, a jury could certainly find that Peek's actions were constitutionally unreasonable. Accordingly, the Court adopts Magistrate Judge Wilkerson's Report and Recommendation on this point.

C<small>ONCLUSION</small>

For these reasons, the Court **ADOPTS in part and REJECTS in part** Magistrate Judge Wilkerson's Report and Recommendation (Doc. 49). Defendants' Motion for Summary Judgment (Docs. 42 and 43) is **DENIED**. Magistrate Judge Wilkerson is **DIRECTED** to recruit counsel to represent Hunt for trial. Accordingly, Hunt's Motion for Recruitment of Counsel (Doc. 46) is **GRANTED**. Because counsel will be recruited, the current trial settings are unworkable. The Court **VACATES** the July 9, 2018 Final Pretrial Conference and July 31, 2018 Jury Trial date to be reset once recruited counsel enters his or her appearance in this case.

**IT IS SO ORDERED.**

**DATED: June 20, 2018**

s/ Nancy J. Rosenstengel_____
**NANCY J. ROSENSTENGEL
United States District Judge**